[Cite as *State v. Schmidt*, 2026-Ohio-2678.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

JONATHAN R. SCHMIDT,

    DEFENDANT-APPELLANT.

CASE NO. 1-25-66

OPINION AND
JUDGMENT ENTRY

Appeal from Lima Municipal Court
Trial Court No. 25TRC00134

Judgment Affirmed

Date of Decision: July 13, 2026

APPEARANCES:

    *Linda Gabriele* for Appellant

    *Joseph C. Snyder* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Jonathan R. Schmidt ("Schmidt") appeals the judgment of the Lima Municipal Court, arguing that (1) his right of confrontation was violated by the introduction of inadmissible hearsay statements at trial; (2) he was denied his right to the effective assistance of counsel; (3) his conviction is against the manifest weight of the evidence; and (4) the State's closing arguments included comments that constituted prosecutorial misconduct. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} At roughly 4:00 A.M. on January 3, 2025, Patrolman Latricia Frueh ("Ptl. Frueh") of the Lima Police Department received a report that an accident had occurred on North West Street in Allen County. When she arrived at the scene in her cruiser, she observed an abandoned vehicle that had crashed into a utility pole in a residential area. She testified that the vehicle appeared to have been traveling in a northbound direction and that, while it was snowing outside, the northbound lane appeared to have been recently cleared by a snowplow.

{¶3} Since no one was in the vehicle, Ptl. Frueh looked inside to see if any of its contents could help to identify the driver. During this process, she was unable to locate the keys to the vehicle. After opening the glove compartment, she came

across the name of "Jonathan Schmidt" on a recently issued traffic citation. A search of this name in the Law Enforcement Automated Data System ("LEADS") returned Schmidt's picture and driver's license information. Ptl. Frueh then had this picture forwarded to the other police units in the area.

{¶4} While Ptl. Frueh was still at the crash site, Officer Corey Long ("Officer Long") was searching the vicinity for the missing driver when he drove past an Express Mart on North West Street that was two or three blocks away from the accident. He pulled his police cruiser into the gas station parking lot after he saw a person—later identified as Schmidt—"ducking behind the gas pumps. . . ." (Tr. 122). Officer Long testified that, during their initial interaction, Schmidt carried the odor of an alcoholic beverage; was leaning against a pillar; and was spilling the contents of a thermos on his own legs.

{¶5} When the police began to ask him questions, Schmidt refused to identify himself and denied any involvement with the nearby accident. However, the police were able to identify Schmidt using the picture that was found when the name on the traffic citation in the vehicle had been entered into LEADS. Shortly thereafter at roughly 4:21 A.M., Officer Long placed Schmidt under arrest for failing to stop after an accident. After his arrest, Schmidt indicated that he was the driver of the abandoned vehicle and had left the scene of the accident because his driver's license was suspended.

{¶6} At 4:27 A.M., Ptl. Frueh knocked on the door of the house that was behind the utility pole that had been hit by the vehicle. The homeowner said that he did not see the accident but went outside after he heard the sound of the crash and saw the driver exit the vehicle. He reported that the driver appeared to a white male; was wearing a skull cap and sweater; and walked in a northbound direction away from the accident.

{¶7} During the trip to the police department, Schmidt admitted that he had several drinks before the accident. At the police station, Schmidt refused chemical testing and signed Form 2255 after Officer Long had read its contents to him. The police performed a records search that confirmed Schmidt's driver's license was subject to an "OVI Suspension." (Tr. 128). The police also found the keys to the abandoned vehicle in Schmidt's possession.

{¶8} On January 6, 2025, Schmidt was charged with one count of operating a motor vehicle under the influence of alcohol or drugs ("OVI") with two prior OVI convictions in a ten-year period and a refusal to take a chemical test in violation of R.C. 4511.19(A)(2)(a)-(b), an unclassified misdemeanor; one count of OVI with two prior OVI convictions in a ten-year period in violation of R.C. 4511.19(A)(1)(a), an unclassified misdemeanor; one count of driving under an OVI suspension in violation of R.C. 4510.14(A), a first-degree misdemeanor; and one

count of failure to stop after an accident on a public roadway in violation of R.C. 4549.02(A)(1), a first-degree misdemeanor.

{¶9} On October 2, 2025, these charges proceeded to a jury trial. During Ptl. Frueh's testimony, the State played the body camera footage of her discovering the traffic citation in the vehicle's glove compartment and of her interviewing the homeowner for the jury. The State also called Officer Long to testify and showed the body camera footage of Schmidt's arrest. At the close of evidence, the trial court granted Schmidt's Crim.R. 29 motion on the charge of failure to stop after an accident on a public roadway in violation of R.C. 4549.02(A), finding that the evidence produced at trial did not establish that the collision with the utility pole occurred on the public roadway.

{¶10} The jury returned verdicts of guilty on one count of OVI with two prior OVI convictions in a ten-year period and a refusal of a chemical test in violation of R.C. 4511.19(A)(2)(a)-(b); one count of OVI with two prior OVI convictions in a ten-year period in violation of R.C. 4511.19(A)(1)(a); and one count of driving under an OVI suspension in violation of R.C. 4510.14(A). Since Schmidt was convicted of two OVI offenses, the State elected to proceed at sentencing on his conviction for OVI with two prior OVI convictions in a ten-year period with refusal of a chemical test in violation of R.C. 4511.19(A)(2)(a)-(b). The trial court issued its judgment entry of sentencing on October 3, 2025.

**{¶11}** Schmidt filed his notice of appeal on October 28, 2025 and raises the following four assignments of error:

**First Assignment of Error**

**The trial court erred in admitting hearsay statements in violation of the defendant-appellant's right to confrontation.**

**Second Assignment of Error**

**Trial counsel was ineffective by failing to litigate, prior to trial, the admissibility of the defendant-appellant's statements. As such, the defendant-appellant was denied effective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights, as well as his rights under Section 10, Article I, Ohio Constitution.**

**Third Assignment of Error**

**The verdict of the trial court was against the manifest weight of the evidence as the State of Ohio failed to prove each and every element of the charges beyond a reasonable doubt.**

**Fourth Assignment of Error**

**The closing argument by the State of Ohio created a manifest miscarriage of justice violating the defendant-appellant's right to a fair trial.**

*First Assignment of Error*

**{¶12}** Schmidt argues that the trial court erred by admitting hearsay statements in violation of the Ohio Rules of Evidence and his constitutional right of confrontation.

Hearsay Legal Standard

**{¶13}** "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). While hearsay is typically inadmissible under the Ohio Rules of Evidence, statements that convey present sense impressions fall within an exception to this general rule. Evid.R. 802, 803(1). A present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Evid.R. 803(1).

**{¶14}** The rationale for this exception is that the temporal proximity between the event and the utterance reduces the likelihood of memory lapses and leaves the declarant little time to reflect or concoct fabrications. *State v. Scott*, 2021-Ohio-3427, ¶ 16 (1st Dist.). Thus, a key indicator of trustworthiness "is the spontaneity of the statement. . . ." *State v. Canas*, 2025-Ohio-1471, ¶ 34 (10th Dist.). "While temporal proximity is critical to a present sense impression analysis, there is no bright line rule as to what amount of elapsed time precludes a finding that the exception applies." *State v. May*, 2012-Ohio-5128, ¶ 42 (3d Dist.).

**{¶15}** In general, an appellate court reviews the admissibility of hearsay statements for an abuse of discretion. *State v. Berry*, 2021-Ohio-1132, ¶ 100 (3d Dist.). But if the challenged hearsay is found to be inadmissible, Civ.R. 52(A)

-7-

provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."  Thus, an error that does not prejudice a defendant's substantial rights is harmless and will not generally provide grounds for a new trial.  *State v. Boaston*, 2020-Ohio-1061, ¶ 63.

{¶16} To determine if an error affected a defendant's substantial rights, courts are to examine (1) "whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict"; (2) "whether the error was not harmless beyond a reasonable doubt"; (3) whether the evidence at trial "establishes the defendant's guilt beyond a reasonable doubt" after the inadmissible evidence is removed from consideration.  *State v. Harris*, 2015-Ohio-166, ¶ 37.

Confrontation Clause Legal Standard

{¶17} A statement that is admissible under the Ohio Rules of Evidence may still run afoul of the defendant's right of confrontation as guaranteed by the Sixth Amendment to the United States Constitution.  *State v. Dever*, 64 Ohio St.3d 401, 415 (1992).  The Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him."  *State v. McBeth*, 2019-Ohio-59, ¶ 25 (3d Dist.), quoting *Crawford v. Washington*, 541 U.S. 36, 38 (2004).

> The United States Supreme Court has interpreted this to mean that admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness.

*State v. Maxwell*, 2014-Ohio-1019, ¶ 34. In turn, "'testimony' . . . is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Crawford* at 51, quoting 2 N. Webster, An American Dictionary of the English Language (1828).

{¶18} "When out-of-court statements made to law enforcement are at issue, the primary purpose test applies." *State v. Little*, 2016-Ohio-8398, ¶ 18 (3d Dist.), quoting *State v. Siler*, 2007-Ohio-5637, ¶ 28. Under this test,

> [s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*State v. Perkins*, 2011-Ohio-2705, ¶ 4 (3d Dist.), quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006). In general, an appellate court reviews an alleged violation of a defendant's right of confrontation under a de novo standard of review. *State v. Brentlinger*, 2017-Ohio-2588, ¶ 51 (3d Dist.).

{¶19} However, if a defendant is able to establish a violation of his or her constitutional right of confrontation, the appellate court examines whether the error is harmless beyond a reasonable doubt. *State v. Carter*, 2024-Ohio-1247, ¶ 46. *See Harris*, 2015-Ohio-166, at ¶ 37. In this context, an error is harmless "where there is 'overwhelming evidence of the accused's guilt or some other indicia that the error

did not contribute to the conviction.'" *State v. Goff*, 2005-Ohio-339, ¶ 12 (9th Dist.), quoting *State v. DeMarco*, 31 Ohio St.3d 191, 195 (1987).

> Overwhelming proof becomes readily apparent when 'the allegedly inadmissible statements . . . at most tend[] to corroborate certain details' of the state's case-in-chief. . . . Accordingly, the admission of purely cumulative evidence in violation of the Sixth Amendment amounts to harmless error.

(Brackets sic.) *State v. Carter*, 2024-Ohio-1247, ¶ 46, quoting *Schneble v. Florida*, 405 U.S. 427, 431 (1972).

Legal Analysis

{¶20} At trial, the video footage of Ptl. Frueh's discussion with the homeowner was admitted into evidence over defense counsel's objection. In this two-minute-long video, the homeowner briefly described the person he saw walking away from the crashed vehicle. On appeal, Schmidt argues that these statements were inadmissible hearsay and that his constitutional right of confrontation was violated since he never had the chance to cross-examine the homeowner.

{¶21} In response, the State argues that these statements were admissible as present sense impressions. Ptl. Frueh testified that she was at the scene of the accident within minutes of receiving the dispatch. Her body camera footage indicates that she approached the abandoned vehicle at 4:09 A.M. and knocked on the homeowner's door at 4:27 A.M. Based on this timing, the State asserts that

these statements were made in sufficiently close proximity to the event to fall within the exception set forth in Evid.R. 803(1).

{¶22} But even assuming that these statements were inadmissible hearsay and were introduced in violation of Schmidt's right of confrontation, any resulting error was harmless beyond a reasonable doubt because the homeowner's description was purely cumulative of other evidence that was used to establish Schmidt's identity at trial. Ptl. Frueh testified that she discovered Schmidt's name on a recent traffic citation inside the vehicle. By searching this name, she found Schmidt's picture with his driver's license record and forwarded this information to the law enforcement officers in the area.

{¶23} Officer Long's testimony and body camera footage indicate that the police eventually used the picture sent by Ptl. Frueh to identify Schmidt. He further testified that he came across Schmidt at a gas station that was only two or three blocks away from the accident. Finally, the recording from Ptl. Frueh's body camera indicated that she was unable to locate the keys to the vehicle at the scene of the accident. Officer Long testified that the keys to the abandoned vehicle were ultimately found in Schmidt's possession.

{¶24} In summary, the homeowner's brief description of the person walking away from the accident was purely cumulative of more compelling evidence that established Schmidt's identity as the driver of the abandoned vehicle. *See State v.*

-11-

*Parker*, 2023-Ohio-2722, ¶ 15 (3d Dist.). Thus, we conclude that any error associated with the admission of this evidence was harmless beyond a reasonable doubt. Accordingly, the first assignment of error is overruled.

*Second Assignment of Error*

{¶25} Schmidt asserts that defense counsel was ineffective for failing to file a motion to suppress several statements he made to the police after his arrest.

Legal Standard

{¶26} "Ohio law presumes that a licensed attorney's representation was competent." *State v. Morgan*, 2024-Ohio-625, ¶ 13 (3d Dist.). "In order to prove an ineffective assistance of counsel claim, the appellant must carry the burden of establishing (1) that his or her counsel's performance was deficient and (2) that this deficient performance prejudiced the defendant." *State v. McWay*, 2018-Ohio-3618, ¶ 24 (3d Dist.), quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

{¶27} To establish deficient performance, the appellant must demonstrate that defense "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *State v. Howton*, 2017-Ohio-4349, ¶ 35 (3d Dist.), quoting *Strickland* at 687. In general, matters that fall within the ambit of trial strategy or debatable tactics do not constitute ineffective assistance of counsel. *State v. Wears*, 2023-Ohio-4363, ¶ 32 (3d Dist.).

**{¶28}** To establish prejudice, "the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Bibbs*, 2016-Ohio-8396, ¶ 13 (3d Dist.). "If the appellant does not establish one of these two prongs, the appellate court does not need to consider the facts of the case under the other prong of the test." *State v. Gear*, 2023-Ohio-1246, ¶ 50 (3d Dist.).

Legal Analysis

**{¶29}** On appeal, Schmidt argues that defense counsel was ineffective for failing to file a motion to suppress that challenged the admissibility of several statements that he had made to the police after his arrest. In this case, the State introduced body camera footage in which the police asked several questions to Schmidt after his arrest while they were still standing outside at the gas station. When the police asked him why he did not report the accident to law enforcement, Schmidt indicated that he was the driver of the vehicle and that he did not call the police because his driver's license was suspended.

**{¶30}** Further, Officer Long also testified that, during the drive to the jail, Schmidt stated that he had several drinks at a local bar but that these comments were not recorded because the police cruiser's camera was not activated at that time. On appeal, Schmidt alleges that defense counsel should have filed a motion to suppress

that argued this evidence was inadmissible because he was not Mirandized between his arrest and the time he made these statements.

**{¶31}** The decision not to file a motion to suppress is not per se ineffective. *State v. Cartlidge*, 2020-Ohio-3615, ¶ 41 (3d Dist.). To prevail with such an argument, the appellant must first establish a reasonable probability exists that the motion to suppress would have been successful. *Id*. The appellant must then establish that a reasonable probability exists that, if the challenged evidence had been excluded, the outcome of the trial would have been different—the same standard for prejudice in a plain-error analysis. *Id.*; *State v. Bond*, 2022-Ohio-4150, ¶ 22.

**{¶32}** Even assuming that a motion to suppress would have been granted, Schmidt cannot demonstrate that a reasonable probability exists that the outcome of this proceeding would have been different in the absence of the challenged statements. First, the State presented ample evidence at trial that Schmidt was the driver of the abandoned vehicle. As noted previously, Ptl. Frueh found Schmidt's name on a recent traffic citation that was in the abandoned vehicle and used this information to obtain a picture of him. The police then used this picture to identify Schmidt. Further, Officer Long came across him at a gas station that was only two or three blocks away from the accident and testified that Schmidt was in possession of the keys to the abandoned vehicle.

**{¶33}** Second, the State presented ample evidence that established Schmidt was intoxicated. Officer Long testified that he detected the odor of an alcoholic beverage when he approached Schmidt and noticed that Schmidt was leaning against a pillar at the gas station. He then noticed that Schmidt was fumbling a thermos that he was holding upside down; was spilling its contents on his pants; and had "slurred" speech. (Tr. 124). Officer Long also said that Schmidt's "footwork" and "mannerism[s]" also showed signs of impairment. (Tr. 133). Since the body camera footage of this interaction was introduced at trial, the jury had the opportunity to observe Schmidt's behavior.

**{¶34}** Further, the evidence that establishes Schmidt was the driver of the vehicle also indicates that he fled the scene of an accident after he had been unable to maintain control of a vehicle and crashed into a utility pole. Schmidt then refused chemical testing after he received the Form 2255 warnings. *See Westerville v. Cunningham*, 15 Ohio St.2d 121, 122 (1968); *State v. Peterson*, 2025-Ohio-877, ¶ 21 (9th Dist.). The record also does not contain any evidence that suggests his refusal was not a product of his "fear of the likely result. . . ." *State v. Tomic*, 2024-Ohio-5537, ¶ 43 (5th Dist.). *See also City of Maumee v. Anistik*, 69 Ohio St.3d 339, 344 (1994).

**{¶35}** Third, while Schmidt admitted his driver's license was suspended, he also entered a stipulation to the fact that his driver's license was suspended pursuant

to R.C. 4511.19. Having examined the evidence in the record, we conclude that Schmidt has failed to demonstrate that a reasonable probability exists that the outcome of his trial would have been different in the absence of his statements to the police. Since Schmidt did not establish the prejudice prong of his ineffective assistance of counsel claim, the second assignment of error is overruled.

*Third Assignment of Error*

{¶36} Schmidt argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

Legal Standard

{¶37} "A sufficiency-of-the-evidence analysis examines whether the State has carried its burden of production at trial." *State v. Whitt*, 2025-Ohio-424, ¶ 16 (3d Dist.). "On review, an appellate court is not to consider whether the evidence at trial should be believed but whether the evidence, if believed, could provide a legal basis for the finder of fact to conclude that the defendant is guilty of the crime charged." *State v. Daniels*, 2024-Ohio-1536, ¶ 13 (3d Dist.).

> Accordingly, the applicable standard 'is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.'

*State v. Reed*, 2024-Ohio-4838, ¶ 30 (3d Dist.), quoting *State v. Plott*, 2017-Ohio-38, ¶ 62 (3d Dist.).

**{¶38}** "A manifest-weight analysis examines whether the State has carried its burden of persuasion at trial." *State v. Carroll*, 2024-Ohio-1626, ¶ 58 (3d Dist.). On review, "an appellate court's function . . . is to determine whether the greater amount of credible evidence supports the verdict." *State v. Harvey*, 2020-Ohio-329, ¶ 12 (3d Dist.), quoting *Plott* at ¶ 73 (3d Dist.).

> Appellate courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"

*State v. Randle*, 2018-Ohio-207, ¶ 36 (3d Dist.), quoting *Plott* at ¶ 73, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

Legal Analysis

**{¶39}** Schmidt argues that, in the absence of the evidence challenged in his first two assignments of error, his two convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. We will first examine the evidence related to his conviction for driving under an OVI suspension. R.C. 4510.14(A) defines this offense and reads, in its relevant part, as follows:

> No person whose driver's . . . license . . . has been suspended under section 4511.19 . . . shall operate any motor vehicle upon the public roads or highways within this state during the period of the suspension.

-17-

As an initial matter, Schmidt filed a written stipulation that stated his driver's license had been "suspended under section 4511.19. . . ." (Doc. 26).

{¶40} Further, Ptl. Frueh testified at trial that she located a vehicle that had been abandoned on a public roadway after it had collided with a utility pole. As noted previously, she found Schmidt's name on a traffic citation in the vehicle and used this information to find his picture on LEADS. The record indicates that the police later used this picture to identify Schmidt after he was located at a gas station that was only two or three blocks from the accident.

{¶41} Importantly, Schmidt was found to be in possession of the keys to the abandoned vehicle. Having examined the record in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the State had produced some evidence that substantiated each of the essential elements for the offense of driving under an OVI suspension.

{¶42} Turning to the manifest-weight argument, we note that Ptl. Frueh testified that Schmidt was not the owner of the vehicle. Officer Long indicated that Schmidt initially denied driving the crashed vehicle and told the police that he was at the gas station because he was waiting for a ride. However, Officer Long also noted that Schmidt was only wearing a sweater and did not appear to be dressed for walking outside on a snowy night.

{¶43} Having examined the evidence based on its weight and credibility, we find no indication that the jury lost its way and returned a verdict that was against the manifest weight of the evidence. We note that the evidence in these analyses does not include any of the materials that Schmidt challenged in his first two assignments of error. For this reason, the arguments challenging Schmidt's conviction for driving under an OVI suspension are without merit.

{¶44} Schmidt's second conviction was for a violation of R.C. 4511.19(A)(2). This provision reads, in its relevant part, as follows:

> (A) No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) of this section, or any other equivalent offense shall do both of the following:
>
> (a) Operate any vehicle . . . within this state while under the influence of alcohol, a drug of abuse, or a combination of them;
>
> (b) Subsequent to being arrested for operating the vehicle, streetcar, or trackless trolley as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests.

As an initial matter, Schmidt stipulated that he had "two prior convictions in the last ten years for [OVI] . . . under 4511.19(A)(1)." (Doc. 26).

{¶45} Further, we incorporate the evidence that was reviewed under our analysis of his conviction for driving under an OVI suspension. This evidence was

sufficient to establish that Schmidt was the driver of the abandoned vehicle. Ptl. Frueh testified that, when she arrived at the scene, she observed a vehicle that had collided with a utility pole and had its airbags deployed. Since Schmidt was the driver of this vehicle, this accident indicates that he was unable to maintain control of the vehicle. He then fled the scene of the accident.

{¶46} Officer Long testified that, as he was driving past a gas station, he saw a person—later identified as Schmidt—"ducking" behind a gas pump. He stated that he detected the odor of an alcoholic beverage when he approached Schmidt at the gas station and noticed that Schmidt's speech was "slurred." (Tr. 124). He further observed that Schmidt was leaning against a pillar; was fumbling a thermos that was in his hands; and spilling its contents on his legs as they spoke. He also cited Schmidt's "footwork" and "mannerism[s]" as showing signs of impairment. (Tr. 133).

{¶47} Officer Long then testified that he asked Schmidt to submit to chemical testing at the police station; that he read him the applicable warnings on Form 2255; that Schmidt refused to submit to chemical testing; and that Schmidt then signed the form. Having examined the record in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the State had produced some evidence that substantiated each of the essential elements of the OVI offense that is defined in R.C. 4511.19(A)(2)(a)-(b).

**{¶48}** Turning to the manifest-weight argument, Ptl. Frueh testified that the weather was snowy on the night of the accident. However, she also testified that the roadway at the crash site appeared to have been recently plowed and that she was not slipping on the roadway as she walked around the vehicle. We also note that the jury was able to view body camera footage of Schmidt's interaction with the police and could compare Officer Long's description of Schmidt's condition with the contents of this recording.

**{¶49}** Having examined the evidence based on its weight and credibility, we find no indication that the jury lost its way and returned a verdict that was against the manifest weight of the evidence. Again, we note that the evidence in these analyses does not include any of the materials that Schmidt challenged in his first two assignments of error. For this reason, the arguments challenging Schmidt's conviction for OVI in violation of R.C. 4511.19(A)(2)(a)-(b) are without merit. Accordingly, the third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶50}** Schmidt asserts that the State's closing arguments contained several comments that constituted prosecutorial misconduct.

Legal Standard

**{¶51}** "The test regarding prosecutorial misconduct in opening statements or closing arguments is whether the conduct or remarks were improper and, if so,

-21-

whether they prejudicially affected substantial rights of the defendant." *State v. Caudill*, 2025-Ohio-787, ¶ 39 (3d Dist.). "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Jones*, 2012-Ohio-5677, ¶ 200, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

> In making this determination, an appellate court should consider several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant.

*Little*, 2016-Ohio-8398, at ¶ 31 (3d Dist.), quoting *State v. Braxton*, 102 Ohio App.3d 28, 41 (8th Dist. 1995). Further, the statements identified as prosecutorial misconduct must be "examined in the context of the entire proceeding." *State v. Tebelman*, 2023-Ohio-882, ¶ 91 (3d Dist.).

{¶52} In this analysis, prosecutors are to be given "wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." *State v. Yelton*, 2025-Ohio-2391, ¶ 40 (3d Dist.), quoting *State v. Stephens*, 24 Ohio St.2d 76, 82 (1970). Thus, "not every intemperate remark by counsel can be a basis for reversal." *State v. Bruce*, 2023-Ohio-3298, ¶ 104 (3d Dist.), quoting *State v. Porter*, 2012-Ohio-1526, ¶ 20 (4th Dist.). If

## Legal Analysis

{¶53} At trial, Schmidt did not object during the State's closing arguments. If the Defense does not object at trial to the statements challenged as prosecutorial

misconduct on appeal, all but plain error is forfeited. *State v. Lopez*, 2024-Ohio-4967, ¶ 29 (3d Dist.).

> For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. . . . Under the plain error standard, the appellant must demonstrate that there is a reasonable probability that, but for the trial court's error, the outcome of the proceeding would have been otherwise.

(Citation omitted.) *State v. Bradshaw*, 2023-Ohio-1244, ¶ 67 (3d Dist.). Plain error is to be recognized "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, (1978), paragraph three of the syllabus. We turn to examining the three arguments raised herein for plain error only.

{¶54} In his first argument, Schmidt argues that the prosecutor committed misconduct when he explained that the State did not call all of the police officers who were present at Schmidt's apprehension because they "saw the same thing" and would likely have said "the same thing over and over again[.]" (Tr. 167). As a general matter, it is improper for a prosecutor to "impl[y] that witnesses not called to testify would have given the exact same testimony as the testifying witnesses. . . ." *State v. Mulvey*, 2009-Ohio-6756, ¶ 42 (7th Dist.).

{¶55} But even assuming that these comments were improper, the State introduced the body camera footage of Schmidt's interaction with the police at trial. The jurors were able to compare Officer Long's descriptions of this interaction

against his body camera footage. We also note that the trial court instructed the jury that closing arguments are not evidence. For these reasons, we conclude Schmidt failed to establish plain error with this first argument.

{¶56} Second, Schmidt argues that the prosecutor committed misconduct by making the following statement: "they were able to identify the defendant because there were people that had descriptions of him." (Tr. 161). He argues that this statement was an improper reference to the homeowner's out-of-court description of his (Schmidt's) appearance as substantive evidence. However, this ambiguous statement could also be read as a reference to the fact that the police officers at the gas station had received the picture and description of Schmidt from his driver's license record after Ptl. Frueh had this information forwarded to them.

{¶57} Even assuming this statement refers to the homeowner's description, the State still presented ample evidence that established Schmidt was the driver of the abandoned vehicle: his name was on a recent traffic citation in the vehicle; he was found within walking distance of the accident; he was in possession of the keys to the vehicle. Given this other evidence, Schmidt has not presented an argument on appeal that explains how the outcome of this proceeding could have been different in the absence of this comment. Thus, even if this comment were improper, Schmidt has failed to establish plain error with this second argument. *See also State v. Armour*, 2022-Ohio-2717, ¶ 54-56 (3d Dist.).

{¶58} Third, Schmidt asserts that the prosecutor's references to his prior OVI convictions during closing arguments were improper because the State failed to specify that these prior convictions were only relevant to establish an element of the OVI offenses that elevated the charges to an unclassified misdemeanor. *See* R.C. 4511.19(G)(1)(c)(ii); *State v. Mason*, 2025-Ohio-1040, ¶ 17, 22 (5th Dist.). Since the State had to prove he had received two prior OVI convictions within ten years of the instant offense, the jury was already aware of these prior convictions. *See Little*, 2016-Ohio-8398, at ¶ 36 (3d Dist.).

{¶59} Further, the trial court gave a jury instruction that explained the purpose of these references to Schmidt's prior OVI convictions at trial. Appellate courts presume that a jury followed the trial court's instructions. *State v. Treece*, 2025-Ohio-4319, ¶ 22 (3d Dist.). Schmidt had not identified any portion of the record that would lead us to dispense with this presumption. For these reasons, we conclude that Schmidt has not established plain error with this third argument. Accordingly, the fourth assignment of error is overruled.

*Conclusion*

{¶60} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Lima Municipal Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and WALDICK, J., concur.**

Case No. 1-25-66

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

_____
John R. Willamowski, Judge


_____
William R. Zimmerman, Judge


_____
Juergen A. Waldick, Judge

DATED:
/hls

-26-